# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cking at 12:43 pm, Dec 06, 2007

In the matter of:

BRIAN E. GRENCHIK
ROBIN M. GRENCHIK

*Debtors*

DARBY BANK & TRUST

*Movant*

v.

BRIAN E. GRENCHIK
ROBIN M. GRENCHIK
and O. BYRON MEREDITH, III,
Chapter 13 Trustee

*Respondents*

Chapter 13 Case

Number 07-41197

**MEMORANDUM AND ORDER**
**ON OBJECTION TO CONFIRMATION AND**
**MOTION FOR RELIEF FROM STAY**

Debtors' Chapter 13 case came for confirmation on October 29, 2007. Darby Bank & Trust ("Darby") filed an Objection to Confirmation and a Motion for Relief from Stay. Darby asked the Court to dismiss Debtors' case or grant stay relief because Debtors' unsecured debt exceeds the limit of $336,900.00 established by 11 U.S.C. § 109(e), rendering Debtors ineligible to file a Chapter 13 case. The fundamental issue is whether a

AO 72A
(Rev. 8/82)

debt which is secured by collateral whose value is less than the debt (an "undersecured" debt) should be treated as fully secured or treated as secured up to the value of the collateral and unsecured for the balance. I hold that for §109(e) purposes an undersecured debt must be treated as both a secured and an unsecured debt.

## FINDINGS OF FACT

Debtors are members of an LLC that operates and owns A Vida Restaurant in Downtown Savannah. Debtors originally owed approximately $100,000.00 to Darby, secured by the furniture, fixtures, and equipment, Debtor's leasehold interest which will expire in less than a year, and a second mortgage on their home. Debtors later became involved in a second restaurant named Coops which they purchased and permitted a family member to operate. In connection with that purchase, they assumed over $300,000.00 in debt outstanding to Darby. After changing the name of the second restaurant to Poppy's, it closed within approximately 90 days. All debts on the two restaurants were held by Darby and were cross-collateralized. Because of financial distress, the Debtors' house was under a threat of foreclosure by the first mortgage lender, and Debtors filed Chapter 13 to stop that foreclosure and preserve the equity in the home for the benefit of creditors.

Debtors' petition lists total assets in the amount of $575,000.00. Debtors list $978,321.00 in secured debt and $80,990.00 in unsecured debt. Chapter 13 Voluntary Petition, Dckt. No. 1, p. 8 (August 6, 2007). Darby's total claim is $510,576.43. Debtors' Chapter 13 plan proposes an allowed secured claim for Darby of $101,677.00, as Debtors

believe that the collateral - the equity in the real estate and minimal value in the leasehold interest in furniture and fixtures - would total that amount. Chapter 13 Plan, Dckt.No. 3 (August 6, 2007).

Darby argues that since its claim is bifurcated, the unsecured portion of its claim should be included in calculating the §109(e) unsecured debt limit, resulting in a $408,899.43 general unsecured claim. Therefore, Darby asks this court to dismiss this case or to grant stay relief since the total unsecured debt exceeds the $336,900.00 unsecured debt limit. *See* Brief, Dckt.No. 57 (November 8, 2007).

In response, since §109(e) refers to "debts" instead of "claims," Debtors argue that "each of the six debts to Darby Bank count only toward the secured debt limit, regardless of the ultimate treatment of those debts in the Chapter 13 plan." Second, Debtors argue that "[f]ocusing on the plain language of 11 U.S.C. 109(e) that measures Chapter 13 eligibility in terms of secured and unsecured 'debts' and observing that 506(a) is concerned with the allowance of 'claims,' the court [should] conclude that it should not sp[l]it claims for eligibility purposes but should accept the debtor's listing of debts. Brief, Dckt.No.60, p. 2 (November 28, 2007)(*citing* In re Morton, 43 B.R. 215 (Bankr.E.D.N.Y. 1984). Third, Debtors argue that "so long as the schedules were filed in good faith, it was 'relatively immaterial' that the Chapter 13 plan might fix claim amounts that are different from the debt amounts listed in the schedules." Id. (*citing* Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751(6th Cir. 1985)).

AO 72A
(Rev. 8/82)

I agree with Darby that the undersecured portion of its claim should be treated as unsecured debt for the purpose of eligibility under §109(e).

## CONCLUSIONS OF LAW

The contention that for eligibility purposes the court should look at the status of the debt under state law rather than the treatment of the claim under bankruptcy law derives from two code sections. Section 109(e) provides in relevant part:

> Only an individual with regular income that owes, on the date of the filling of the petition, noncontingent, liquidated, unsecured *debts* of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 . . . may be a debtor under chapter 13 of this title.
>
> 11 U.S.C. § 109(e)(emphasis added).

Section 506(a)(1) provides in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured *claim* to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured *claim* to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.
>
> 11 U.S.C. § 506(a)(1)(emphasis added).

Debtors argue that the Court should look at their debts as they existed at the time of filing under state law to determine whether or not they are eligible for relief under Chapter 13. They note that at the time of filing, they owed a $510,576.43.00 secured state law debt which will only become a bifurcated claim after the petition is filed. Therefore, they argue that the entire $510,576.43.00 should be included in the secured debt limit.

Despite the fact that the terms "claim" and "debt" are distinct terms in the Code, "the distinction is not meaningful in this context." In re Rifkin, 124 B.R. 626, 628 (Bankr.E.D.N.Y. 1991). "A claim is essentially a right to payment. [11 U.S.C. § 101(5)]. A debt is a liability on a claim. [11 U.S.C. § 101(12)]. The legislative history to 11 U.S.C. § 101[12] states that the 'terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor.'" In re Morton, 43 B.R. 215, 220 (Bankr.E.D.N.Y. 1984)(*quoting* H.R.Rep.No. 595, 95th Cong., 1st Sess. (1977) 310, U.S.Code Cong. & Admin.News 1978, ¶. 5287, 6267). Since "debt" and "claim" can be used interchangeably in this context, I do not agree with Debtors' argument that the use of the word "debt" in §109(e) indicates this debt should only be treated as secured for eligibility purposes.

There is a split of authority concerning whether § 506(a)(1) applies in the application of § 109(e). All of the circuit courts and the vast majority of bankruptcy courts hold that the undersecured portion of debts must be included in the unsecured debt limitation of § 109(e). *See e.g.,* Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 983 (9th Cir. 2001); In re Soderlund, 236 B.R. 271, 273-74 (9th Cir. B.A.P. 1999); In re Ficken, 2 F.3d 299, 300

AO 72A
(Rev. 8/82)

(8th Cir. 1993); Brown & Co. Securities Corp. v. Balbus (In re Balbus), 933 F.2d 246, 247 (4th Cir. 1991); Miller v. U.S., 907 F.2d 80, 82 (8th Cir. 1990); Matter of Day, 747 F.2d 405, 406 (7th Cir. 1984); U.S. v. Dallas, 157 B.R. 912, 913 (S.D.Ala., 1993); In re Harrold, 257 B.R. 916, 916-17 (Bankr.W.D.Ark. 2000); In re Prosper, 168 B.R. 274, 278 (Bankr.D.Conn.1994); In re Strober, 136 B.R. 614, 625 (Bankr.E.D.N.Y. 1992); In re Mason, 133 B.R. 877, 878-79 (Bankr.N.D.Ohio 1991); In re Rifkin, 124 B.R. 626, 628 (Bankr.E.D.N.Y. 1991); In re Jerome, 112 B.R. 563, 566 (Bankr.S.D.N.Y. 1990); In re BOS, 108 B.R. 740, 741-42 (Bankr.D.Mont. 1989); United States v. Edmonston, 99 B.R. 995, 999 (E.D.Cal.1989); In re Potenza, 75 B.R. 17, 19 (Bankr.Nev. 1987); Matter of Martin, 78 B.R. 928, 929-30 (Bankr.S.D.Iowa); In re Bobroff, 32 B.R. 933, 935-36 (Bankr.E.D.Pa. 1983); In re Ballard, 4 B.R. 271, 274-75 (Bankr.E.D.Va. 1980).

A small minority of bankruptcy courts hold that § 506 only applies in the treatment of claims and not in the calculation of debt. "A claim is only deemed allowed if it has been filed and has not been objected to by any party in interest or if it has been judicially determined after an objection has been interposed. Thus, if a § 109(e) determination required bifurcation, such a determination could only be made after all claims are filed and all objections thereto had been resolved." In re Soderlund, 236 B.R. at 274. *See e.g.,* In re Edmonston, 99 B.R. 993 (Bankr.E.D.Cal.1988); In re Morton, 43 B.R. 215 (Bankr.E.D.N.Y. 1984).

I adopt the majority view for the following two reasons. First, that approach

AO 72A
(Rev. 8/82)

looks to the substance and not the form of debt in question. "If the courts cannot look beyond the mere existence of a piece of paper creating a security interest a debtor could easily circumvent the debt limitations of § 109(e)." Miller, 907 F.2d at 82. As the Seventh Circuit explained in Day,

> These decisions avoid the temptation to raise form over substance and represent a common-sense solution to a statutory interpretation problem not considered by Congress . . . a contrary interpretation of section 109(e) could lead, at the limit, to the absurd situation where a prospective Chapter 13 debtor with $449,998 in unsecured debts creates a security interest for $349,999 in property with little or no value. If courts cannot look beyond the mere existence of documents creating such an interest, this maneuver produces secured debts of $349,000 and unsecured debts of $99,999-amounts within section 109(e). Surely Congress did not intend for debtors to so easily circumvent the $100,000 [now $307,675] limitation on unsecured debts in Chapter 13 proceedings."
>
> Day, 747 F.2d at 407.

Second, as the Bankruptcy Court of the District of Montana points out,

> Under §1325, dealing with confirmation standards, except for home mortgages, the secured claimant is entitled only to the present value of its claim, as of the effective date of the Plan, and it is on the present value basis fixed under §506(a) the claim may be restructured. It would defy fair play to allow a Debtor to assert that, as in this case, for eligibility requirements, the secured claim is valued at

> $279,800.00, while for repayment upon confirmation under §1325(a)(5), the claim will be repaid at $201,700.00. To allow such inconsistent treatment of a claim in the same case leads to an absurd result, which is not compatible with Congressional intent and proper statutory interplay of Chapter 13 and §506(a).
>
> In re BOS, 108 B.R. at 742.

Therefore, I now join the four circuits and the overwhelming majority of bankruptcy courts in holding that the undersecured portion of a secured creditor's claim is counted as unsecured debt in the §109 eligibility analysis. As a result, I will dismiss Debtors' case because they owe unsecured debt well in excess of the §109(e) threshold.

This result is not changed by Debtors' reliance on In re Pearson, 773 F.2d at 751. In Pearson, the debtors listed a debt as both secured and unsecured stating that the amount of each was unknown because they were in dispute. After the dispute was resolved, the debtors amended their schedules to reflect an unsecured debt that was above the then $100,000.00 threshold. Id. at 752. The court found that the debtors in good faith could not say at the outset what the amount of the claim was, that eligibility was to be determined by the schedules as originally filed if filed in good faith, and that despite the ultimate result that debtor had unsecured debt in excess of the threshold, the debtor was nevertheless eligible for relief under Chapter 13. Id. at 756.

While Pearson is distinguishable,[1] it would not alter the outcome here. Debtors' schedules, on their face, indicate that they are ineligible for Chapter 13 relief. The Schedules, even as amended, list $390,109.20 as the unsecured portion of the total secured claims. Amended Schedules D and G, Dckt.No. 59 (November 28, 2007). More important even if the schedules on their face reported unsecured debt under the Chapter 13 limit, the evidence at the hearing was undisputed that the value of all Darby's collateral was only slightly over $100,000.00 and its debt exceeds $475,000.00. On these facts, the unsecured portion of its claim is unsecured debt owed by Debtors for purposes of eligibility and they are not eligible to be Chapter 13 debtors.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDERED that the case is dismissed.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 6th day of December, 2007.

[1] Pearson differs on its facts from the present case because the schedules as originally filed in Pearson did not even suggest that there was $100,000.00 or more unsecured debt since the schedules listed the debt as "unknown." In the present case, the schedules not only stated a definite amount of unsecured debt but also established an unsecured debt amount higher than the §109(e) threshold. *See* In re Mannor, 175 B.R. 639, 641-42 (Bankr.E.D.Mich. 1994); In re Edmonston, 99 B.R. at 994.